**C.J. BETTERS CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 438–88 C.

United States Claims Court.

April 17, 1992.

Leonard A. White, Bethesda, Md., atty. of record, for plaintiff.

J. Peter Mulhern, with whom were Asst. Director Thomas W. Petersen, Director David M. Cohen, Asst. Atty. Gen., Stuart M. Gerson, Dept. of Justice, and Edward Eitches, Dept. of Housing and Urban Development, Washington, D.C., for defendant.

## ORDER DENYING CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES

WIESE, Judge.

### BACKGROUND

In an earlier phase of this lawsuit, this court issued a decision holding that representations contained in a Prospectus to Bid and bid kit issued by the Department of Housing and Urban Development (HUD) (relating to the sale of a rent-subsidized apartment complex) constituted warranties included in the contract of sale. The court further held that the Government breached these warranties and thus was accountable to the purchaser (plaintiff) for damages. A full account of the facts is set out in the court's earlier opinion. *See C.J. Betters Corp. v. United States*, 21 Cl.Ct. 378 (1990) (*Betters I*).

Conflicting theories on the proper measurement of the Government's liability to plaintiff bring the case before us once again. The issues raised at this stage of the proceeding are: (i) whether the Government's initial failure to assert the contract's limitation of liability clause (Paragraph 13 of the contract of sale) in its answer constitutes a waiver of that defense; (ii) if not waived, whether the restriction on liability of Paragraph 13 applies to the instant breach and thus limits plaintiff's recovery to no more than the purchase price of the property; and (iii) whether recovery, if not restricted by Paragraph 13, may be measured by the cost of repair. These questions are presented here through cross-motions for partial summary judgment. We deny both motions.

For purposes of the present discussion few facts are necessary. The contract of sale included a warranty that 128 dwelling units in the apartment complex (there were 24 two-story buildings involved) would meet HUD Housing Quality Standards (HQS) at or shortly after the time of closing, October 27, 1986. However, the local housing authority (the agency through whom the tenant-based rent subsidy program was to be administered) insisted on its own reinspection of these units and, in the process, denied certification to a number of units as not meeting HQS. As a result, anticipated rental subsidies were not received by plaintiff. Additionally, plaintiff was forced to engage in significant repairs to the buildings ahead of its contemplated rehabilitation schedule. Despite plaintiff's requests, the Government did not intervene and halt the local housing authority's reinspections until June 1987, some seven months after closing. In *Betters I*, this court held that HUD bears the responsibility for the delays and added costs associated with the certification process.

Included in the contract of sale was a "Limitation of Liability" clause (Paragraph 13), which reads in its entirety as follows: "Seller's liability shall not exceed the amount of funds paid by Purchaser to Seller hereunder." The Government invokes this clause as a basis upon which to limit its liability for the breach described.

### DISCUSSION

#### Waiver of Defense

Plaintiff starts out with the contention that the Government's reliance on

Paragraph 13 is in the nature of an avoidance or affirmative defense, and thus the failure to have raised that paragraph in its answer constitutes a waiver of the defense under RUSCC 8(c) and 12(b). We disagree.

Paragraph 13 is not an acknowledgment of liability. It is, rather, an attempt to limit, by agreement, the amount of damages recoverable from the Government in the event of its breach. Since that paragraph implies no defense to the root issue in this case, we fail to see how reliance on Paragraph 13 can be considered a matter "constituting an avoidance or affirmative defense."

Moreover, even if the "notice" considerations underlying Rule 8 would favor the Government's having pled Paragraph 13 from the outset of the suit, no adverse consequences resulted from its not doing so since to date the proceedings here have been focused exclusively on liability, not quantum. Thus, the allegedly belated assertion of Paragraph 13 has occasioned no misspenditure of resources by either plaintiff or the court. Consequently, we see no force to the argument that the Government should be precluded, on grounds of waiver, from now relying on Paragraph 13.

### Limitation of Liability Clause

■ Plaintiff next argues that Paragraph 13 should not apply in this case, where the Government breached a warranty found in the contract of sale. We find this argument more persuasive.

■ Limitation of liability clauses in government contracts are generally understood to address those special circumstances "in which (1) a need for the property develops after it has been declared surplus and offered for sale, or (2) a serious mistake has been made, such as a grave price discrepancy between the true value of the item and the amount bid." *Freedman v. United States,* 162 Ct.Cl. 390, 396, 320 F.2d 359, 362 (1963). Further, as pointed out in *Benjamin v. United States,* 172 Ct.Cl. 118, 138, 348 F.2d 502, 516 (1965), terminations premised on such circumstances are very different from "sales in which the Government warrants goods to be of a certain quality and instead delivers

inferior items." Limitation of liability clauses, as the *Benjamin* decision noted, are not intended to exempt the Government from liability for breach of warranty; "if that is to be done, it should be done by explicit disclaimer of the kind often used in surplus disposals." *Id.*

Based on the above-stated principles, it follows that the clause the Government seeks to invoke here is not applicable to our situation. Paragraph 13 is virtually identical to the contract language construed in *Benjamin,* where the clause read that the "seller's liability ... shall not exceed amount of purchase price." *Id.* Regarding that language, the court stated:

> "To read the clause in [an] unlimited fashion—excusing all damages for any type of breach—would come close to (if not reach) the pit of voidness; the Government would in effect promise nothing although the other party would supposedly be bound." [*Id.* (quoting *Freedman,* 162 Ct.Cl. at 403, 320 F.2d at 366) (footnote omitted).]

Likewise, to construe Paragraph 13 as covering breaches of warranty would allow the Government to essentially walk away from its agreement without liability save for an obligation to restore the status quo by refunding the purchase price.

The Government attempts to distinguish the analysis followed in *Benjamin* and *Freedman* by noting that in this case plaintiff will be permitted to retain ownership of the apartment complex and, at the same time, recover damages up to the amount of the purchase price. Thus, contends the Government, its promise cannot be taken as one totally lacking in content; hence the limitation of liability clause should remain enforceable.

This is not an argument we can accept. The constraint recognized in *Benjamin* and *Freedman* against literal application of a limitation of liability clause is not confined, as defendant's argument appears to assume, just to instances where the Government is seeking to abridge the damages attributable to a total failure of performance. To the contrary, *Benjamin* makes

clear that even cases of inadequate or incomplete performance fall outside the exculpatory reach of a limitation of liability provision: "[the clause] does not include sales in which the Government warrants goods to be of a certain quality and instead delivers inferior items." 172 Ct.Cl. at 138, 348 F.2d at 516.

The rule in this Circuit, then, is that the efficacy of a limitation of liability clause does not extend to those situations where the breach, whether total or partial, arises out of events within the Government's control. *Ozark Dam Constructors v. United States*, 130 Ct.Cl. 354, 127 F.Supp. 187 (1955). In such circumstances, public policy considerations favor preservation of an unrestricted damages remedy. Accordingly, we hold that Paragraph 13 does not apply here to limit the amount of the Government's liability for breach of warranty to the purchase price.

### Damages Formula

The final question deals with the proper measure of plaintiff's damages. Damages seek to provide, in monetary terms, the value of the promise left unfulfilled. The aim, in other words, is to place the injured party in the same economic position it would have been in had the contract been performed according to its terms. *Benjamin*, 172 Ct.Cl. at 138, 348 F.2d at 517. We refer to the interest to be compensated as the injured party's expectancy interest. Since damages are in effect the monetary alternative of performance, the proper measure of damages for breach of warranty "is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." U.C.C. § 2–714(2), 1B U.L.A. 371 (1989).

The first issue then is to determine the value of the Government's promise, *i.e.*, the market value of the apartment project plaintiff had contracted to purchase. Presumably, that value is established by the price plaintiff agreed to pay, namely, $1,035,000. However, it would be open to plaintiff to show that the project was actually worth more than the purchase price—that, in fact, it had made a "good deal." Such higher value—assuming proof bore it out—would retain for plaintiff the benefit of its bargain, *i.e.*, establish its expectancy interest.

The next step involves a calculation of the market value of the building the Government delivered. It is the difference between what was promised and what was delivered that establishes the amount of plaintiff's damages.

Plaintiff asserts that the formulation of damages should be viewed from the standpoint of cost of repair, meaning the dollars expended to place the property in the condition it would have been in had the Government delivered what was promised. The contention is not correct. Cost of repair, as an alternative approach to the assessment of damages, may be relied on *only* when the loss in value cannot be determined with reasonable certainty. Restatement (Second) of Contracts § 348 (1979). Additionally, cost of repair is an acceptable alternative measure of damages only when that cost is not unreasonably disproportionate to the probable loss in value. *Id.* § 348(2)(b).

Neither of these qualifying conditions have been shown to exist here. Plaintiff has offered no reasons to suggest that its loss is not susceptible to reasonable valuation through the use of market data. Similarly, plaintiff's presentation is devoid of any attempt to demonstrate that the damages being claimed (roughly $7.1 million dollars) are not, in fact, grossly disproportionate to the loss suffered because of the Government's breach. (The apartment complex was purchased by plaintiff under conditions of competitive bidding for approximately $1 million and was appraised by HUD, shortly before the time of sale, at approximately $1.7 million.) Plaintiff may not rely on a cost of repair valuation of damages.

In addition to the loss in value (established by market criteria), plaintiff is also entitled to recover incidental or consequen-

tial damages. "Incidental losses include costs incurred in a reasonable effort, whether successful or not, to avoid loss, as where a party pays brokerage fees in arranging or attempting to arrange a substitute transaction." Restatement (Second) of Contracts § 347 comment c. These only include reasonable costs that would not have occurred but for the breach. *Id.* § 347(e).

## CONCLUSION

For the reasons stated above, the parties' cross-motions for partial summary judgment on damages are denied.